UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Criminal No. 15-10338-FDS

UNITED STATES OF AMERICA

v.

OSCAR NOE RECINES-GARCIA, et al.,

Defendants.

ORDER ON GOVERNMENT'S MOTION FOR PROTECTIVE ORDER

KELLEY, U.S.M.J.

## I.  Introduction

In a second superceding indictment the government alleges that fifty-six

defendants engaged in a racketeering conspiracy involving five murders, seventeen

attempted murders, drug trafficking, robberies, and illegal possession of firearms, among

other crimes.  The government characterizes the enterprise as a transnational criminal

organization known as Mara Salvatrucha, commonly referred to as MS-13.  The

indictment sets out at length the history of the organization and the manner in which it

operates.  The government also has filed an affidavit by FBI Special Agent Jeffrey E.

Wood in support of the government's motion to detain the defendants (#138) that

explains that MS-13 is "one of the world's most organized, structured, and violent

criminal organizations."   According to the affidavit, the organization is run by

incarcerated leaders in El Salvador, and has an estimated 6,000 members in the United

States with a presence in at least forty-six states and the District of Columbia, and has

30,000 members world-wide in Mexico, Honduras, Guatemala, and El Salvador.  MS-13

has a "close knit and reliable criminal network" and disciplines members who do not

follow directives.  Its members are "extremely mobile and transient."  The government

asserts that the individuals who are indicted in this case are either full-fledged members

or significant associates of the group.

In the affidavit, Special Agent Wood explains that a central tenet of MS-13 is that

members are required to investigate and kill informants.   An order to kill an informant

typically comes from the top of the organization, and all members of MS-13 are obligated

to enforce it.  The affidavit quotes a leader of MS-13 at a meeting, telling representatives

from Massachusetts, Ohio, Maryland, Virginia, California, and Texas that all "snitches"

and their families will be investigated and killed.  The affidavit sets out specific cases

where individuals who were suspected of being informants were targeted to be killed,

including an "infamous" case from 2003 in which a former federal cooperator, a pregnant

woman, was lured into some woods in Shenandoah County, Virginia, mutilated, and

stabbed to death.   The affidavit quotes a leader of MS-13 as saying that before someone

is targeted, the organization requires "proof " that the person is in fact an informant.

## II. The Protective Order

There are presently forty defendants who have appeared in court in this case.[1]
Approximately half of them were arrested and brought to court on January 29, 2016 for
their initial appearances.   Because so many defendants appeared in court on January 29,
ten of them appeared before Chief Magistrate Judge Jennifer Boal, who kept the cases
through those defendants' detention hearings.  After January 29, other defendants were
arrested and brought into court, and several were brought into court from state custody
where they are awaiting trial or serving state sentences.   The last initial appearance in
connection with this case prior to the initial status conference on March 21 took place on
March 17, 2016.

Defendants were entitled to discovery prior to their detention hearings.  The
government wanted defense counsel to sign a protective order pertaining to the discovery
before giving discovery to counsel.  The court did not think it was desirable or necessary
to hold separate hearings with each defense counsel concerning the protective order.
Instead, in order to get discovery flowing and have detention hearings take place as
quickly as possible, the court clearly informed counsel at each defendant's initial
appearance that counsel could agree to the government's protective order without
prejudice to objecting to it and being heard on any objection at the initial status

---

[1]Two defendants whose whereabouts are known have not had their initial appearances in
the case.  One of them is in custody pursuant to a Massachusetts state case and one is in custody
in connection with an out-of-state case.  Another defendant was brought into court but his case
eventually was dismissed. (#252.)  The rest of the defendants presumably are fugitives.

conference on March 21, 2016.

On February 2, 2016 the government filed a motion for a protective order. (#88.) On February 10, after consulting with defense counsel, the government filed an amended motion. (#142.)  The amended motion stated that the proposed order "is designed to at least govern discovery through the detention hearing stage of the case and may be revisited and revised at the initial status conference on March 21, 2016."   The government's motion also stated that the grounds for the requested order are addressed in the detention affidavit of FBI Special Agent Wood.  (#142 at 1.)  On February 12, the court allowed the motion for amended protective order, stating in the order that any counsel who wished to object to the order in writing could do so by Friday, February 26, 2016, and the court would hear argument on objections at the initial status conference on Monday, March 21.  (#174.)

The amended protective order states that only the "Defense Team"[2] shall have access to the discovery, and the Team may only use the discovery in connection with the litigation of this case.  The Team may not give copies of any discovery to the defendants, although defendants can review discovery in the presence of Team members.  The government agrees to provide discovery to the institutions where defendants are incarcerated for review on the institutions' computers.  Defendants are restricted to

---

[2]The "Defense Team" is defined as attorneys of record, support staff, investigators and others retained to participate in the defense.  It does not include "anyone affiliated with a defendant in another unrelated case under an explicit or implicit joint defense agreement, unless authorized to do so by further order."  (#142-1 at 1.)

viewing discovery on these computers and may not print, disseminate, copy, or maintain

the materials provided to the institutions. (#142-1.)

The government advised the court at the hearing on March 21 that the documents

provided to counsel and the documents contained on disks provided to the institutions are

individually watermarked as to each defendant and that the documents and videos have

been redacted to obscure the identity of informants.

One defendant, Oscar Ramirez-Cornejo, filed a written objection stating that he is

charged with unlawful reentry after deportation in violation of 18 U.S.C. § 1326 and that

the protective order would prevent counsel from disclosing his alien file to him.  (#91 at

1.)  Counsel misreads the protective order, as it would simply prevent defendant from

having a copy of the file in his possession.  He could certainly see it, either on a computer

at the institution where he is held, or in the presence of counsel.  Nevertheless, at the

hearing on March 21 the government conceded that discovery such as this defendant's

administrative file does not need to be protected, and the government agreed to produce

such discovery to the defendant unencumbered by any protective order.

Another defendant, Edwin Gonzalez, filed an opposition stating that the

government has not complied with Fed. R. Crim. P. 16, which requires that the

government must justify its request for a protective order by specifically detailing a

clearly defined and serious injury to the government that will result from public

disclosure of the materials.  (#123.)  Another opposition was filed by defendant Jose

Andrade, stating, among other things, that the government had not made a particularized

showing under the rule as to why the protective order should apply to him.  (#227.)  At

the hearing on March 21, defense attorneys further argued (1) that the order is

unworkable, because in the past defendants have had limited access to computers in the

various institutions where they are held;[3] (2) some defendants are on highly restricted

segregation units and have few, if any, opportunities to use the institutions' computers;

(3) some defendants have limited education and cannot use computers; (4) forcing

defendants to view thousands of pages of documents on a computer, when they will not

discuss the documents with their attorneys until many days later, will inhibit

communication with the attorneys, and it is much more effective for defendants to have

paper copies of documents on which they can take notes; and (5) since most of the

defendants do not speak English, many documents will need to be translated into Spanish,

and the protective order creates serious logistical problems for attorneys who need to give

translated documents to their clients for review.

The government responded that it seeks the protective order to safeguard the lives

of the informants in this case.  Interestingly, the government concedes that the identities

of the informants are known to the defendants, and are in fact apparent from the

discovery, even though identifying information has been redacted from documents and

videos.  The government admitted that it has no way to prevent the names of these

---

[3]Defendants in this case are incarcerated at MCI Walpole, the Donald W. Wyatt
Detention Center, the Plymouth County Correctional Facility, the Essex County House of
Correction, and other state facilities.  Counsel complained that the computers in these institutions
are limited in number, do not support encrypted disks such as the ones the government has
provided, and that defendants only get to use the computers for a few hours each week.

informants from being communicated to the public, and in fact, one defense attorney stated that a government witness testified to the name of an informant at a detention hearing.  However, the government argues that even redacted documents, if provided to the leadership of MS-13, will serve as the "proof" necessary for the leadership to order the killing of the informants, suggesting that without these documents, the leadership of MS-13 would not have the necessary "proof" to warrant ordering them to be killed.

### III.  The Law

Rule 16(d) provides that a protective order requires a showing of "good cause." Fed. R. Crim. P. 16(d)(1); *see United States v. Bulger*, 283 F.R.D. 46, 52 (D. Mass. 2012) (citing *United States v. Lee*, 374 F.3d 637, 652 (8th Cir. 2004)).  To show good cause, the government must make a particularized, specific showing of potential harm, rather than broad allegations "unsubstantiated by specific examples or articulated reasoning."  *United States v. Wecht*, 484 F.3d 194, 211 (3rd Cir. 2007); *see also Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986).

Here, the government has requested a "blanket protective order," covering every document turned over to defendants.   In a case such as this one, where there is voluminous discovery, this type of order may expedite the flow of discovery "and avoid the time consuming, inefficient process of a document by document review."  *United States v. Bulger*, 283 F.R.D. at 52 n.11.  However, even in civil cases, these orders are disfavored because "they are by nature overinclusive."  *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 787 (1st Cir. 1988); *see also United States ex rel. Franklin v. Parke-*

*Davis*, 210 F.R.D. 257, 261 (D. Mass. 2002).  At the hearing on March 21, in addition to

agreeing that groups of documents such as one defendant's alien administrative file

should not come under the protective order, the government conceded that many other

documents in this case, for example, photographs of crime scenes and other forensic

materials, are not sensitive, and do not need to be under the protective order.  The

government argued, however, that it has already provided thousands of documents to

counsel, and that to require the government to go back through the discovery already

provided and cull out the protected documents would be unduly burdensome.

## IV.  Analysis

There is no question that the government's concern for the safety of its cooperating

witnesses is valid.  *See United States v. Bulger*, 283 F.R.D. at 55-56; *see also* Fed. R.

Crim. P. 16(d), Advisory Committee Notes to the 1966 Amendments (recognizing the

need to protect material when disclosure may impact the safety of a witness or lead to

witness intimidation).   The defendants' arguments that the government has not made any

specific showing of good cause for the protective order or that the government must make

a showing as to each defendant in the case are not persuasive.  The affidavit of Special

Agent Wood establishes that the criminal organization in question is far-reaching and has

a well-documented practice of murdering government cooperators, and asserts that the

defendants are all either members or close associates of the organization.  The court,

however, must balance the government's pressing safety concerns with the defendants'

right to review the evidence against them with their counsel in a timely and effective

manner.   Even if the issues pertaining to access to the computers at the various

institutions could be worked out, (which is doubtful), and every defendant could have

adequate access to a computer to view evidence, the other problems raised by counsel

concerning this method of review are still formidable.  The court understands that it will

be troublesome for the government to parse the discovery into protected and non-

protected material, but after balancing the concerns raised by the government and

defendants, that is what must be done.

Subparts (a), (b), and ( c) of the present Amended Protective Order (#142-1),

which state that all members of the Defense Team will execute the Agreement to the

Protective Order prior to receiving discovery materials; that the Defense Team will use

the materials only for this litigation; and that the materials will be accessed, etc., only by

members of the Team, should remain the same.

The court rejects subparts (d), (e), and (f) of the Amended Protective Order.  The

government shall propose a new protective order and a plan for providing protected and

non-protected discovery to counsel and defendants.[4]  The government is to confer with

Attorney Michael Tumposky concerning how defense counsel may provide protected

---

[4]One possibility is for the government to continue to provide all discovery to counsel and also to the institutions on disks, and the defendants may view the discovery on institutional computers as they are able to, but the government shall inform defense counsel which documents are not protected, and defense counsel may provide defendants with paper copies of those documents.

documents that have been translated into Spanish to defendants.[5]  The government's

proposal shall include specific reasons why certain categories of documents should be

protected and shall include a timetable for providing discovery.[6]  The proposal shall be

filed by Friday, April 1, 2016.   Defense counsel may object to the proposal in writing by

Friday, April 8.  In the meantime, the previous protective order will remain in place.


        /s/ Page Kelley
        Page Kelley
        UNITED STATES MAGISTRATE JUDGE


Date: March 24, 2016

---

[5]At the hearing on March 21, 2016, Attorney Tumposky volunteered to act as coordinator for this effort.

[6]Given the court's ruling, dates suggested for production of discovery at the hearing on March 21 may be extended if necessary.  In setting out reasons why certain documents should be protected, the government should explain why, if the identity of the informants is already public knowledge, documents and videos with the informants' identifying information redacted from them should be protected.  The affidavit of Special Agent Wood states that the leadership of MS-13 "generally requires court paperwork or some other proof of documentation to support a request to green light [murder] a member."  (#138-1 at 26.)  The court finds it curious,  however, that the organization would require an actual document from the discovery in this case to support an order to harm the informants here, where the case has been publicized and the identities of the informants are already public knowledge.