UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,

v.

RECINES-GARCIA, ET. AL.

Criminal Action No.:  15-10338-FDS-6

**DEFENDANT HERRZZON SANDOVAL'S MEMORANDUM IN SUPPORT OF HIS MOTION IN LIMINE TO EXCLUDE IMPROPER EXPERT TESTIMONY**

Likening them to anthropologists, the government proposes to offer the testimony of two law enforcement officers—Special Agent Jeffrey Wood and Massachusetts State Police Sgt. Mario Millett (who were deeply involved in the day-to-day investigation leading to this prosecution)—as expert witnesses in the trial of the Group Three defendants.  Defendant Herzzon Sandoval respectfully requests that the Court exclude the expert testimony the government proposes to offer—particularly to the extent that the government expects it to mirror Special Agent Wood's testimony during the November 2017 Group Four trial.  The testimony the government proposes to offer should be excluded because:

- *First,* the proposed testimony would go well beyond the kind of testimony permitted by Fed. R. Evid. 702;

- *Second,* the testimony would violate Sandoval's rights under the Sixth Amendment's Confrontation Clause;

- *Third,* it would amount, in effect, to impermissible law enforcement "overview testimony"; and

- *Fourth,* the admission of the proposed testimony is substantially more prejudicial than probative.

Alternatively, Sandoval requests that the Court conduct a hearing, outside the presence of the jury, to determine whether the admission of the proposed testimony is consistent with the requirements of *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) and its progeny.

## I.    THE GOVERNMENT'S PROPOSED EXPERT TESTIMONY

On December 20, 2017, the government provided notice that it intended to offer proposed expert testimony from one or both of two key investigators in this case—Special Agent Wood and Sgt. Millett—as experts on MS-13. *See* Exhibit A. In summary, the government proposes to call either Wood, Millett, or both, to testify about:

- what MS-13 is ("a street gang that originated in California and later spread throughout the United States, Central America and Mexico");

- the identity of its members ("Most members are from El Salvador or Honduras, or are of Central American descent.");

- how MS-13 is organized ("MS-13 is divided into chapters, which members refer to as 'cliques'");

- the particular clique allegedly involved in *this trial* ("MS-13 cliques frequently abbreviate their names using 'LS' for Locos Salvatruchas. For instance, the Eastside MS-13 clique is known as 'ESLS' for Eastside Locos Salvatruchas.")

- purported changes to MS-13's methods of operation during this investigation ("Specifically, Special Agent Wood and Sergeant Millett observed that requirements for attaining full membership in MS-13 became more stringent and violent during the investigation.")[1]

The government describes the "foundation" for Wood and Millett's proposed expert testimony as:

> [T]he knowledge and experience they have developed during their careers in law enforcement, in particular, their long-time work with the FBI's North Shore Safe Street's Gang Task Force investigating MS-13 and other violent street gangs.

---

[1] The language in the government's disclosure effectively parrots the language in the Fifth Superseding Indictment.

Alternatively, Sandoval requests that the Court conduct a hearing, outside the presence of the jury, to determine whether the admission of the proposed testimony is consistent with the requirements of *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999) and its progeny.

## I.    THE GOVERNMENT'S PROPOSED EXPERT TESTIMONY

On December 20, 2017, the government provided notice that it intended to offer proposed expert testimony from one or both of two key investigators in this case—Special Agent Wood and Sgt. Millett—as experts on MS-13. *See* Exhibit A. In summary, the government proposes to call either Wood, Millett, or both, to testify about:

- what MS-13 is ("a street gang that originated in California and later spread throughout the United States, Central America and Mexico");

- the identity of its members ("Most members are from El Salvador or Honduras, or are of Central American descent.");

- how MS-13 is organized ("MS-13 is divided into chapters, which members refer to as 'cliques'");

- the particular clique allegedly involved in *this trial* ("MS-13 cliques frequently abbreviate their names using 'LS' for Locos Salvatruchas. For instance, the Eastside MS-13 clique is known as 'ESLS' for Eastside Locos Salvatruchas.")

- purported changes to MS-13's methods of operation during this investigation ("Specifically, Special Agent Wood and Sergeant Millett observed that requirements for attaining full membership in MS-13 became more stringent and violent during the investigation.")[1]

The government describes the "foundation" for Wood and Millett's proposed expert testimony as:

> [T]he knowledge and experience they have developed during their careers in law enforcement, in particular, their long-time work with the FBI's North Shore Safe Street's Gang Task Force investigating MS-13 and other violent street gangs.

---

[1] The language in the government's disclosure effectively parrots the language in the Fifth Superseding Indictment.

During that time, Special Agent Wood and Sergeant Millett have arrested and/or interviewed numerous members and associates of MS-13, interviewed rival gang members and victims of MS-13 related crimes, conducted surveillance of MS-13 meetings, monitored real-time audio transmissions of MS-13 meetings, reviewed and transcribed recorded meetings and telephone conversations between MS-13 members, and conducted searches relating to MS-13 criminal activities.

Thus, the government contends, Wood and Millett are "analogous to . . . an anthropologist who understand the cultural mores of a particular group by educating himself and conducting extensive fieldwork."

## II.   ARGUMENT

### A. The Proposed Testimony Is Impermissible Under Fed. R. Evid. 702.

Fed. R. Evid 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.[2]

In *United States v. Mejia,* 545 F. 3d 179 (2007), the Second Circuit reversed the defendant's MS-13 related racketeering conviction because the government introduced evidence, much like the government proposes to offer here, that failed to satisfy Rule 702. In *Mejia*, the government

---

[2] Under Fed. R. Evid 703, "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."

offered the testimony of a police officer as an MS-13 expert. The officer's credentials closely mirror Wood's and Millett's.[3] So, too, did the subject matter of his testimony.[4] The Second Circuit noted that it had endorsed the introduction of law enforcement expert testimony in some circumstances—where, for example, testimony focused on "the operation, symbols, jargon, and internal structure of criminal organizations," *id*. at 190, and that, for example, "expertise may have been necessary to connect specific murders to MS-13."

> An appropriate (admissible) example of such expertise would have been an expert's explanation of how the graffiti near a body indicated that the murderer was a member of MS-13, or an expert's testimony that the gang used a particular method to kill enemies and that as a result of his review of the autopsy reports (which would have been in evidence before the jury), he had concluded that MS-13 committed those murders.

*Id*. at 195. The Second Circuit noted, however, that the use of a case agent as an expert witness posed significant risks to the fairness of the trial process.

> The Government's decision to call the case agent as an expert witness . . . "increase[d] the likelihood that inadmissible and prejudicial testimony [would] be

---

[3] "Alicea had been an officer of the New York State Police for eighteen years, and he had been an investigator since 1992. In June 2000, five years before the trial, Alicea had been assigned to the FBI Long Island Gang Task Force. He was also the Chair of the Intelligence Committee of the East Coast Gang Investigators Association." *Id*. at 186.

[4] "Much of Alicea's testimony concerned MS-13's background. He testified about MS-13's history, its presence on Long Island, and its national and international presence; about the gang's colors, hand signs, graffiti use, naming practices, and tattoos; and about its local subunit structure, leadership structure, division of responsibilities, and membership rules. In addition, Alicea testified to more specific details about MS-13's operations. He stated that when MS-13 members fled from prosecution or needed to travel for 'gang business reasons,' such as 'to transport narcotics,' 'to transport weapons,' or 'to commit crimes in other areas,' they traveled 'on a Greyhound bus' or by car. According to Alicea, MS-13 members from Virginia, California, and El Salvador had attended organizational meetings in New York State, and MS-13 leaders throughout the nation communicated with each other by telephone. He testified that MS-13 treasury money '[was] used to buy guns,' to help members in prison or in other states, or to buy narcotics. Significantly, Alicea also asserted that MS-13 needed guns 'to do what MS 13 does, which is, you know, shoot at rival gang members, and sometimes in the process, obviously, some people get hit.' *Id*. at 187.

> proffered." The officer expert's status, we suggested, was likely to give his factual testimony an "unmerited credibility" before the jury. The defense's inability to meaningfully challenge the case agent's expert opinions inadvertently reinforces the agent's credibility on questions of fact. In addition, case agents testifying as experts are particularly vulnerable to making "sweeping conclusions" about the defendants' activities.

*Id*. at 192 (internal citations omitted); *see also United States v. Alvarez*, 837 F.2d 1024, 1030 (11th Cir. 1988) ("When the expert is a government law enforcement agent testifying on behalf of the prosecution about participation in prior and similar cases, the possibility that the jury will give undue weight to the expert's testimony is greatly increased."). In *Mejia*, the Court ruled, inter alia, that the expert testimony violated Rule 702 because much of it—particularly those parts that attached particular significance to the particular aspects of MS-13's activities in this specific case—"concerned material well within the grasp of the average juror." In particular, evidence of narcotics trafficking and murder—the predicate acts at issue here—did not require expert testimony. Neither did "testimony about the use of MS-13 treasury funds to buy firearms and narcotics." *Id*. As the Court observed:

> When case agents testify as experts, they gain "unmerited credibility when testifying about factual matters from first-hand knowledge." The testimony loses its expert character and the entire process transforms into "the grand jury practice, improper at trial, of a single agent simply summarizing an investigation by others that is not part of the record." Alicea's factual testimony about matters that required no specialized knowledge clearly implicates these concerns, and the district court erred in allowing him to testify beyond the bounds for which expert testimony would have assisted the jury in understanding the evidence

*Id*. at 197 (internal citations omitted).

### B. The Proposed Expert Testimony Would Also Violate the Confrontation Clause.

In *Mejia*, the Court vacated the defendant's conviction for a second reason as well. Because the case agent's expert testimony relied on statements made during interrogations during the investigation at issue, and there was no practical way to distinguish information he provided to the jury based on testimonial statements from information he provided from other sources, the admission of expert testimony violated the Sixth Amendment's Confrontation Clause under the principles set out in *Crawford v. Washington*, 541 U.S. 36 (2004). *Id*. at 199.  Here, as in *Mejia*, the government's proposed expert testimony will be based in large measure on the fact that "Special Agent Wood and Sergeant Millett have arrested and/or interviewed numerous members and associates of MS-13." *See* Exhibit A.  As the Mejia court noted, "an officer expert's testimony violates *Crawford* 'if [the expert] communicated out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of an expert opinion.'"  That is precisely what the government intends to do here and, as in *Mejia*, the Court should find itself "at a loss in understanding" how Wood and Millett intend to "appl[y] [their] expertise" to statements MS-13 members have allegedly made to them without impermissibly "convey[ing] the substance of those statements to the jury."  Permitting Wood and Millett to testify as experts here would violate Mr. Sandoval's Confrontation Clause rights.

### C. The Proposed Testimony Would Constitute Improper Overview Testimony

The First Circuit has often warned against the dangers of permitting law enforcement agents to provide an advance, overview summary of the prosecution's case. As the First Circuit has explained, impermissible overview testimony comprises declarations by a witness—most commonly a law enforcement officer involved in the relevant investigation—presented in the early phases of a criminal trial to describe the government's general theory of the case. *See United States*

v. *Vázquez-Rivera,* 665 F.3d 351, 356 (1st Cir. 2011); *United States* v. *Meises*, 645 F.3d 5, 14 at n.13 (noting that such evidence "often provides an anticipatory summary of the prosecution's case by previewing the testimony of other witnesses"). "Because the witness is, in essence, testifying about the results of a criminal investigation before the government has presented any evidence—often including aspects of the investigation in which he did not actually participate"—the First Circuit has "repeatedly admonished the use of such testimony." *United States v. Valdivia*, 680 F.3d 33, 47 (1st Cir. 2012) (citing *United States v. Rosado-Perez*, 605 F.3d 48, 55 (1st Cir. 2010) ("We have previously cautioned that . . . [o]verview testimony at times involves a witness's assertion of facts not based on his own knowledge when those facts are not otherwise proven.")

Here, the government can offer testimony about what Special Agent Wood and Sgt. Millett saw as case agents—for example, testimony concerning surveillance they personally conducted. However, Mr. Sandoval respectfully objects to the government being able to offer their testimony, in essence, as second opening argument (under oath), particularly to the extent that the government would use them, as it did in the trial of Rafael Leoner-Aguirre, to vouch for a non-testifying cooperating witness. *See, e.g.* Testimony of Special Agent Wood, Nov. 8, 2017, at 35 (describing FBI admonishments to cooperating witnesses: "1, you must provide truthful information to the FBI.").

### D. The Proposed Testimony is Substantially More Prejudicial than Probative

Fed. R. Evid 403 provides that the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Here, the proposed expert testimony would accomplish all of those purposes. The government intends to offer recorded evidence of alleged ESLS clique meetings

and the testimony of percipient witnesses—self-professed MS-13 members—to explain what Mr. Sandoval and the other defendants actually did. That should be sufficient for the government. Expert testimony would only unfairly prejudice Mr. Sandoval by, in effect, using trustworthy law enforcement agents to vouch for real percipient witnesses—the cooperating witnesses who have pleaded guilty and agreed to testify. There is no reason the Court should permit the government to gild the lily.

### E. Alternatively, the Court Should Conduct a Daubert/Kumho Hearing to Determine whether Wood and Millett Should be Permitted to Testify

At a minimum, the Court should conduct a hearing to permit defense counsel to explore Wood and Millett's credentials and the data they relied on so that the Court may consider "whether the [proposed] testimony is the product of reliable principles and methods." If the witnesses are relying solely or primarily on experience, then the witnesses must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for their opinion, and how that experience is reliably applied to the facts. As the Advisory Committee Notes to Rule 702 state: "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.").

### III. CONCLUSION

For the reasons stated above, Defendant Herzzon Sandoval respectfully requests that the Court exclude the proposed expert testimony of Special Agent Wood and Sgt. Millett or, in the alternative, conduct an evidentiary hearing outside the presence of the jury to determine whether to admit their testimony.

-9-

Dated: January 8, 2018

Respectfully submitted,

*/s/ Madeleine K. Rodriguez*
Martin F. Murphy, BBO #363250
Madeleine K. Rodriguez, BBO #684394
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
Tel: 617- 832-1000
Fax: 617-832-7000
mmurphy@foleyhooag.com
mrodriguez@foleyhoag.com

*Attorneys for Herzzon Sandoval*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on January 8, 2018.

*/s/ Madeleine K. Rodriguez*
Madeleine K. Rodriguez